UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME L. COOPER,

          Plaintiff,          CIVIL ACTION NO. 16-cv-13477

          v.          DISTRICT JUDGE VICTORIA A. ROBERTS

COMMISSIONER OF          MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

          Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jerome L. Cooper seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 21) and Defendant's Motion for Summary Judgment (docket no. 26). Plaintiff filed a Reply (docket no. 28) to Defendant's Motion. The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I. RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 21) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 26) be **GRANTED**.

## II.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability and disability insurance benefits on June 12, 2012, alleging that he has been disabled since January 3, 2011, due to "Chronic lower ba[ck] pain" and "back injury." (TR 107.) The Social Security Administration denied Plaintiff's claims on January 26, 2012, and Plaintiff requested a *de novo* hearing. (TR 114, 139–40.) On May 9, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Jerome B. Blum. (TR 71–97.) In a September 20, 2013 decision, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b) and was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 120–27.) The Appeals Council reviewed and vacated ALJ Blum's decision on the basis that ALJ Blum did not properly consider the medical opinion evidence. (TR 132.) The Appeals Council therefore remanded Plaintiff's case back to the ALJ with instructions to "[g]ive further consideration to the claimant's maximum residual functional capacity" and in so doing, "evaluate the treating and nontreating source opinion[s] . . . , and explain the weight given to such opinion evidence." (TR 133.)

On remand, on June 30, 2015, Plaintiff again appeared with a representative and testified at a hearing before ALJ Blum. (TR 24–51.) In a July 20, 2015 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 14–19.) The Appeals Council declined to review the ALJ's decision (TR 1–6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the court.

## III.     HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 21 at 4–10) and the ALJ (TR 13–17) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony. Defendant incorporated the ALJ's factual summary by reference. (Docket no. 26 at 4.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 3, 2011, and that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease and obesity. (TR 13.) The ALJ further found that Plaintiff suffered from hypertension and diabetes mellitus but that these impairments were not severe. (*Id.*) Additionally, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 14.) The ALJ then found that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), provided the work "is unskilled in nature." (TR 14.)

Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 18–19.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from June 17, 2011, through the date of the decision. (TR 19.)

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc.*

*Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)      Plaintiff was not presently engaged in substantial gainful employment; and

(2)      Plaintiff suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).    This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

**C.      Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) the ALJ erred in evaluating Plaintiff's RFC, specifically by failing to properly weigh the medical opinion evidence and properly consider Plaintiff's diabetes mellitus; and (2) the ALJ erred in evaluating Plaintiff's credibility. (Docket no. 21 at 11–27.) Because the ALJ's credibility assessment affected the formulation of Plaintiff's RFC, the undersigned will address Plaintiff's credibility arguments first.

### 1. ALJ's Assessment of Plaintiff's Credibility

As a preliminary matter, Plaintiff argues that the ALJ's credibility assessment should be analyzed by the Court under SSR 16-3p, which did not become effective until March 28, 2016,[1] rather than SSR 96-7p, which was in effect at the time of the ALJ's decision on July 20, 2015. (Docket no. 21 at 2–3, n.1.) The undersigned disagrees with Plaintiff's argument, and has

_____

[1] *See* 2016 WL 1119029 (SSR 16-3p); 2016 WL 1237954 (setting March 28, 2016, as the effective date of SSR 16-3p).

consistently noted in Social Security opinions issued since the promulgation of SSR 16-3p that SSR 16-3p should not be retroactively applied. *See, e.g., Jefferson v. Comm'r of Soc. Sec.*, No. 16-cv-10167, 2017 WL 411211, at *4 n.1 (E.D. Mich. Jan. 9, 2017) (R&R adopted, 2017 WL 395295 (E.D. Mich. Jan. 30, 2017)); *Coleman v. Comm'r of Soc. Sec.*, No. 16-cv-1734056, 2017 WL 1734056, at *3 n.1 (E.D. Mich. Apr. 6, 2017) (R&R adopted, 2017 1632962 (E.D. Mich. May 2, 2017)). "The [Social Security] Act does not generally give the SSA the power to promulgate retroactive regulations." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006). The undersigned notes Plaintiff's argument that SSR 16-3p is "a clarification of, rather than a change to, existing law," and therefore should be retroactively applied. (Docket no. 21 at 2 n.1.) However, the undersigned agrees with other courts in the Sixth Circuit that "[t]he text of SSR 16-3p does not indicate the SSA's intent to apply it retroactively." *Murphy v. Comm'r of Soc. Sec.*, No. 1:15-cv-126-SKL, 2016 WL 2901746, at *8 n.6 (E.D. Tenn. May 18, 2016); *see also Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n.3 (E.D. Mich. June 9, 2017) (R&R adopted, 2017 WL 2905125 (E.D. Mich. July 7, 2017)). The undersigned will therefore analyze the ALJ's credibility assessment pursuant to SSR 96-7p.

Applying SSR 96-7p, the undersigned acknowledges that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the

adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ considered and discussed Plaintiff's hearing testimony and other subjective complaints in conjunction with the record evidence, and she found that Plaintiff's allegations were not entirely credible. (TR 14.) The ALJ explained this assessment as follows:

> The evidence of record fails to establish the presence of an impairment that would account for the disabling symptoms and limitations alleged by the claimant.

> The claimant alleges that he is primarily disabled due to low back pain. However, the record clearly reflects that he has only received routine and

conservative treatment. The majority of his care has come from Dr. Mouna Haddad-Khoury, an internist. An MRI performed in January 2011 did reveal evidence of a disc bulge at L4 but only *mild* right foraminal narrowing and no compression of the exiting nerve root (Exhibit 1F). Furthermore, while Dr. Haddad-Khoury's treatment notes do reflect some findings of positive straight-leg raising and tenderness to palpation of the lumbar spine, many other examinations failed to reflect any abnormal findings (Exhibits 1F, 5F, 9F, 10F). Furthermore, during an examination with Dr. Norman Rotter, a neurosurgeon, in January 2011, the claimant did display positive straight-leg raising on the left but only minimal tenderness to palpation of the low back and mild limitations of low back movements (Exhibit 1F). The claimant's motor and sensory examinations were within normal limits and he was advised that he was not a surgical candidate (Exhibit 1F).

In fact, the claimant's primary treatment has consisted of medication and physical therapy. However, despite the fact that the claimant has attended [a] number of physical therapy sessions the record also reflects that the claimant was discharged from physical therapy on several occasions because of no-shows and missing multiple sessions (Exhibits 1F, 4F). There is other evidence in the record that reduces the claimant's overall credibility. For example, the claimant was told by Dr. Hadded-Khoury in January 2012 that he should return to the clinic in one month if his back pain did not improve. However, the claimant did not return to Dr. Haddad-Khoury for four months, at which time he reported that his back pain was controlled with medication, and there were no abnormal physical examination findings related to the claimant's back (Exhibit 1F). Furthermore, the claimant was consistently advised to lose weight; however, the record reflects no significant weight loss. He was also given a pain management referral in late 2013; however, there is no evidence that the claimant ever followed up on this treatment recommendation (Exhibit 9F). While the claimant's noncompliance is not the sole reason for denying this claim, it suggests an unwillingness to do what is necessary to improve his condition. Moreover, it is an indication that his symptoms might not have been as severe as he has alleged.

(TR 14–15.) Later in the decision, the ALJ further discussed the fact that Plaintiff applied for and received unemployment benefits after the alleged onset date. The ALJ noted:

To receive unemployment benefits in Michigan, an individual must aver that they are capable of any type of work should a job be offered. While the receipt of unemployment benefits is only one of many factors that must be considered in determining whether a claimant is disabled (20 CFR 404.1512(b)), the fact that the claimant was reporting to another agency that he was capable of working reduces the credibility of his statements that his impairments and symptoms were disabling.

(TR 17.)  Finally, the ALJ provided a conclusory mention of Plaintiff's activities of daily living:

> Furthermore, although the claimant has described daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled.  First, the allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty.  Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.  Overall, the claimant's reported limited daily activities are not considered to be outweighed by the other factors discussed in this decision.

(TR 17.)

Plaintiff raises several specific issues with regard to the ALJ's credibility analysis.  First, Plaintiff challenges the ALJ's discussion of Plaintiff's daily activities, and the undersigned agrees that the ALJ's discussion does not provide a sufficiently detailed analysis of this factor. Nevertheless, as quoted above, the ALJ does discuss how the objective medical evidence does not support disability-level limitations, and then discusses Plaintiff's treatment in the form of medication and physical therapy, two of the other credibility factors.  And, it is well-established that the ALJ is not required to "discuss every factor or conduct a factor-by-factor anlaysis." *See e.g. Felisky*, 35 F.3d at 1041; *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases).  The ALJ's failure to properly discuss Plaintiff's daily activities therefore does not constitute reversible error in this case.

Moreover, the ALJ discusses Plaintiff's failure to comply with a number of treatments recommended by his doctors, including physical therapy, pain management, and weight loss. (TR 15.)  Plaintiff does not contend that this finding is in error; rather he contends that there were good reasons for his decision not to comply.  Specifically, he argues that 1) the physical therapy was not effective, 2) Plaintiff could not lose any significant amount of weight because he

was unable to exercise, and 3) the ALJ failed to inquire about whether Plaintiff could afford pain management. These arguments are not persuasive. First, Plaintiff's doctors continued to prescribe physical therapy, which undermines Plaintiff's claim that physical therapy was not effective. (TR 289, 333, 402.) PT notes from May 2013 also state that "the patient is making progress in rehabilitation," and that "the patient will benefit from continued treatment." (TR 334.) Second, in addition to exercise, Plaintiff's doctors recommended changes to his diet to lose weight. (TR 300.) Third, while Plaintiff faults the ALJ for not inquiring into whether Plaintiff could afford pain management, Plaintiff does not actually seem to contend that he could not afford such treatment. He cites to a page in the record which describes how two different *diabetes* medications were "costly," and to his testimony at the administrative hearing that he is covered by his wife's HAP and "VA coverage, if needed." (TR 84.) But Plaintiff does not actually contend that he could not afford pain management treatment nor does he reference any proof in the record that he tried to obtain such treatment at a reduced cost. Perhaps the ALJ should have specifically inquired into whether Plaintiff could afford such treatment, but Plaintiff has failed to show that any such error on the part of the ALJ was harmful.

The ALJ also relied on Plaintiff's receipt of unemployment benefits during the alleged period of disability, which required Plaintiff to certify that he was capable of full-time work. (TR 17.) The ALJ's reliance on this point as one factor in Plaintiff's credibility analysis was not improper, despite Plaintiff's argument that his certification could have indicated his ability to work a sedentary job, in which case he could still be entitled to disability benefits. *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 801–02 (6th Cir. 2004) (finding ALJ's decision to discount claimant's testimony was supported by substantial evidence where claimant

simultaneously applied for unemployment benefits, reasoning that "[a]pplications for unemployment and disability benefits are inherently inconsistent").

Finally, Plaintiff challenges the ALJ's assignment of "very little weight" to the report from the Department of Veterans Affairs (which stated that Plaintiff was entitled to "individual unemployability" benefits). (Docket no. 21 at 25.) However, the ALJ's analysis of this report is not related to the ALJ's evaluation of Plaintiff's credibility. In evaluating the report, the ALJ states that "the evidence relied upon by the VE in making its findings [is] not in the record," and that the report provides does not explain "the type of work-related activities that might be affected, [or] the medical evidence that would support these findings." (TR 17.) Plaintiff does not even attempt to explain how the report, if given more weight by the ALJ, would have bolstered Plaintiff's credibility or supported Plaintiff's specific allegations concerning his functional limitations.

Additionally, as the ALJ noted, the VA report does not contain the evidence supporting the VA's determination that he is disabled. (TR 17.) Plaintiff argues that the ALJ was required to obtain the records himself, even though Plaintiff did not produce them. (Docket no. 28 at 4–5.) The undersigned disagrees. Courts in this district have held that when another government agency finds an SSA claimant to be disabled, any error by the ALJ in failing to consider that decision is harmless "when the other agency's decision presents only bare conclusions or approval of disability benefits, without any medical opinions or underlying reasons or standards supporting such a finding, an ALJ's failure to consider that decision is harmless." *Vanderpool v. Comm'r of Soc. Sec.*, No. 12-13727, 2013 WL 5450276, at *1 (E.D. Mich. Sept. 30, 2013) (collecting cases). While the VA form is more detailed than the worker's compensation form at issue in *Vanderpool*, a similar principle applies–an ALJ's failure to seek out medical records

underlying another government agency's disability determination does not warrant reversal. Finally, the Sixth Circuit has expressly held that the "VA relies on independent and distinct criteria to assess disability, . . . and its determination would not have controlled whether [a claimant] was eligible for Social Security disability benefits." *Deloge v. Comm'r of Soc. Sec.*, 540 Fed. App'x 517, 518–19 (6th Cir. Oct. 15, 2013).

The preceding discussion demonstrates that the ALJ set forth legitimate reasons for discrediting Plaintiff's hearing testimony and subjective complaints in his decision, some of which apply the factors set forth in 20 C.F.R. § 404.1529(c)(3), and SSR 96-7p. Moreover, the ALJ supported his finding that the severity of Plaintiff's subjective complaints was not supported by the objective medical evidence by explicitly discussing and citing to examples of inconsistency between Plaintiff's complaints and the medical record. Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that he gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is sufficiently supported by substantial evidence and should not be disturbed. Plaintiff's Motion should therefore be denied in this regard.

## 2. The ALJ's Formulation of Plaintiff's RFC

Plaintiff also challenges the ALJ's formulation of Plaintiff's RFC, arguing that the ALJ improperly weighed the medical opinions of Mouna Hadded-Khoury, M.D., Plaintiff's treating internist; Norman Rotter, M.D., a neurosurgeon who examined/treated Plaintiff on two occasions; and the State agency physician, Sonia Ramirez-Jacobs, M.D, who reviewed a portion of Plaintiff's medical record. (Docket no. 21 at 11–16.) Plaintiff also argues that the ALJ failed to properly consider Plaintiff's diabetes mellitus. (Docket no. 21 at 16–18.)

The RFC is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). It is defined as the most, not the least, the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.956(a). The ALJ derives the RFC after considering the medical and other relevant evidence in the record. *Id.* He must support the RFC by including a narrative discussion describing how the evidence supports his conclusions and providing citations to specific medical facts and nonmedical evidence. SSR 96-8, 1996 WL 374184, at *7 (July 2, 1996). In determining the RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary setting on a regular and continuing basis. *Id.* "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

The ALJ concluded his findings regarding Plaintiff's RFC as follows:

> In sum, the above residual functional capacity assessment is supported by a variety of factors. The claimant's routine and conservative care suggests that while he does experience some impairment-related symptoms, such symptoms never stay at a level severe enough to prevent the claimant from working on a sustained and consistent basis. Therefore, the undersigned finds that limiting the claimant to work within the above-defined residual functional capacity sufficiently accommodates any limitations resulting from his impairments and is entirely consistent with the record as a whole.

(TR 18.) Earlier in the decision, the ALJ also discussed how a January 2011 MRI revealed only "mild right foraminal narrowing, and no compression of the exiting root nerve," and that many of Plaintiff's examinations "failed to reflect any abnormal findings." (TR 15 (citing Exhibits 1F, 5Fm 9F, and 10F.) The ALJ specifically discussed an exam performed by Dr. Rotter, which revealed that Plaintiff had "only minimal tenderness to palpation of the low back and mild limitations of low back movements," and that Plaintiff "was not a surgical candidate." (TR 15

(citing Exhibit 1F).)  Dr. Rotter also opined, as the ALJ noted, that Plaintiff's "motor and sensory examinations were within normal limits."  (*Id.*)  The ALJ then noted that Plaintiff's obesity "may contribute to his back pain," which, the ALJ found, warranted a "reduction in capacity to light work."  (TR 15.)

Next, the ALJ addressed the medical opinion evidence.  Specifically, he assigned "very little weight" to Dr. Rotter's January 2011 opinion that Plaintiff should "avoid bending and lifting."  (TR 16, 317.)  He assigned "very little weight" to Dr. Haddad-Khoury's June 2011 opinion that Plaintiff should perform no bending or squatting, and should not lift anything over ten pounds (TR 287), and to Dr. Haddad-Khoury's August 2012 opinion that Plaintiff could occasionally, but not frequently, lift and carry up to 10 pounds, stand or walk less than two hours in an eight-hour workday and sit for less than six; that he is limited in his upper and lower extremities; and that he can never climb, balance, kneel, crouch, crawl, or stoop.  (TR 16, 326– 29.)  Finally, the ALJ found that Dr. Ramirez-Jacobs's opinion—that Plaintiff could occasionally lift up to 20 pounds, frequently lift 10 pounds, sit up to six hours in an eight-hour workday, stand up to six hours in an eight-hour workday, and could only occasionally climb stairs/ramps/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl, but had no pushing or pulling limitations (TR 111–13)—"should not be given significant weight," indicating that he was indeed assigning some weight to Dr. Ramirez-Jacobs's opinion.  (TR 16.)

Finally, the ALJ addressed Plaintiff's credibility, as well as the VA disability determination (which the ALJ discounted), and the fact that Plaintiff received unemployment benefits during the alleged period of disability.  (TR 16–17.)  As discussed above, the undersigned finds no harmful error in the ALJ's assessment and consideration of these issues.

a. The ALJ's assessment of the medical opinion evidence

Plaintiff contends that the evidence detailed above is insufficient to show that he is capable of light work. First, as noted, he challenges the ALJ's weighing of the medical opinion evidence.

It is undisputed that Dr. Haddad-Khoury is a treating physician and that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*

*of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

As stated above, Dr. Haddad-Khoury opined in June 2011 that Plaintiff should perform no bending or squatting, and should not lift anything over ten pounds (TR 287), and she opined in an August 2012 opinion that Plaintiff could occasionally, but not frequently, lift and carry up to 10 pounds, stand or walk less than two hours in an eight-hour workday and sit for less than six; that he is limited in his upper and lower extremities; and that he can never climb, balance, kneel, crouch, crawl, or stoop. (TR 16, 326–29.) The ALJ assigned "very little weight" to these opinions, finding:

> [N]either the objective findings in Dr. Haddad-Khoury's treatment records nor her treatment of the claimant has been consistent with what one would expect if the

> claimant were truly as limited as she reported. Further, Dr. Haddad-Khoury failed to provide any substantive basis or explanation for her opinions; rather, she primarily checked off boxes related to the claimant's limitations, without any sort of narrative report regarding the evidence supporting her conclusions (other than listing the claimant's diagnosis and reiterating his limitations).

(TR 16.) Earlier in his decision, when discussing Dr. Haddad-Khoury's treatment records, the ALJ specifically identified a January 2011 MRI, and pointed out that the MRI revealed only "mild to moderate degenerative changes at the bottom two levels [of Plaintiff's spine]," and only "a slight bulge in the midline." (TR 316.) The ALJ discussed how Dr. Haddad-Khoury made "some findings of positive straight-leg raising and tenderness to palpation of the lumbar spine," but that "many other examinations failed to reflect any abnormal findings." (TR 15.) The ALJ also discussed Dr. Rotter's findings of "only minimal tenderness to palpation of the low back and mild limitation of low back movements," and a normal range or motion and sensory exam. (*Id.*) Finally, the ALJ discussed Dr. Rotter's specific finding that Plaintiff was not a candidate for surgery, and that Plaintiff's "primary treatment has consisted of medication and physical therapy." (*Id.*)

Based on this discussion, it is clear that the ALJ explained how Dr. Haddad-Khoury's opinions were not well-supported and were inconsistent with other substantial evidence in the record, including the normal exam findings and the January 2011 MRI. The ALJ also considered other factors such as the fact that Dr. Haddad-Khoury never strayed from a conservative course of treatment for Plaintiff's issues. Plaintiff cites a number of pieces of evidence which tend to support Dr. Haddad-Khoury's opinion, including the positive straight leg test results, physical therapy notes (a number of which, the undersigned notes, appear to be based primarily on Plaintiff's own complaints to the therapist), and other notes from Dr. Haddad-Khoury's treatment records. (Docket no. 21 at 15–16.) While this evidence does indeed tend to support Plaintiff's

assertions, the undersigned concludes there is substantial evidence supporting the ALJ's decision to discount Dr. Haddad-Khoury's opinion. Plaintiff also discusses the extent of his treatment relationship with Dr. Haddad-Khoury (docket no. 21 at 13), but the ALJ clearly acknowledged the nature of their relationship, noting that the "majority of [Plaintiff's] care has come from Dr. Mouna Haddad-Khoury." (TR 14–15.) The undersigned finds no error with the ALJ's assessment of Dr. Haddad-Khoury's opinion; Plaintiff's Motion should be denied in this regard.

With regard to Dr. Rotter's opinion, the ALJ wrote:

> In January 2011, Dr. Rotter opined that the claimant should "avoid bending and lifting" (Exhibit 1F). However, this opinion is not consistent with Dr. Rotter's reported physical examination findings at that appointment, which were only mildly abnormal (Exhibit 1F). Furthermore, at a subsequent appointment in March 2011, Dr. Rotter failed to mention any restrictions (Exhibit 1F). This suggests that even if these limitations were valid they lasted for only a very brief period of time. Therefore, this opinion is given very little weight.

(TR 16.)

Plaintiff again emphasizes that Dr. Rotter noted "degenerative changes" in Plaintiff's spine, as observed in the January 2011 MRI, and the fact that Plaintiff had positive straight leg tests. (Docket no. 21 at 14.) As discussed, however, Dr. Rotter characterized the changes as "mild to moderate," and the ALJ also notes that Dr. Rotter found that Plaintiff had only "minimal tenderness to palpation of the low back and mild limitation of low back movements," that "motor and sensory examinations were within normal limits," and that Plaintiff "was not a surgical candidate." (TR 15.) Thus, again, while there is some evidence to support Plaintiff's position, there is also substantial evidence supporting the ALJ's decision to assign "very little weight" to Dr. Rotter's opinion, based on its inconsistency with the record and lack of supportability. (TR 16.)

Plaintiff also takes issue with the ALJ's notation that the absence of restrictions in Dr. Rotter's second letter concerning Plaintiff's care suggests that even if the limitations opined to in Dr. Rotter's first letter were valid, "they lasted for only a very brief period of time." (TR 16; *see also* Docket no. 21 at 14.) Plaintiff argues that "it appears" Plaintiff went to Dr. Rotter the second time "for recommendations in how to treat his chronic pain," rather than for a physical exam. (Docket no. 21 at 14.) The undersigned is not persuaded by Plaintiff's speculative argument on this point. The fact remains that Dr. Rotter advised Plaintiff in January 2011 not to bend or stoop, and to lose weight and "continue with the exercises that his physiatrist gave him" (TR 317), but in March 2011, Dr. Rotter simply prescribed physical therapy and weight loss, with no mention of refraining from bending and stooping. The ALJ's interpretation of this evidence is reasonable.

Finally, Plaintiff argues that "the ALJ does not explain the weight afforded to the State agency doctor [Dr. Ramirez-Jacobs] who only appears to have reviewed records 1F." (Docket no. 21 at 15.) Plaintiff then immediately acknowledges that the ALJ found Dr. Ramirez-Jacobs's opinion "should not be given significant weight." (*Id.*; *see also* TR 16.) The ALJ based his decision on the fact that Dr. Ramirez-Jacobs did not examine Plaintiff, and because Dr. Ramirez-Jacobs did not have "the opportunity to evaluate additional evidence that was submitted for the hearing level." (TR 16.) The undersigned notes that Dr. Ramirez-Jacobs was not a treating source, and finds that the ALJ properly considered her opinion concerning Plaintiff's RFC. Plaintiff's argument concerning the ALJ's evaluation of Dr. Ramirez-Jacobs's opinion should be rejected.[2]

---

[2] The undersigned notes that Plaintiff also specifically argues the ALJ failed to acknowledge Dr. Ramirez-Jacob's finding that Plaintiff has "recurrent tinnitus." (Docket no. 21 at 15; *see also* TR 113.) The undersigned finds no harmful error in this regard, as the ALJ was not required to adopt Dr. Ramirez-Jacobs's opinion wholesale (especially considering the ALJ found the opinion should not be entitled to

b. The ALJ's assessment of Plaintiff's diabetes mellitus (DM)

Plaintiff also argues that the ALJ failed to "properly consider DM in Plaintiff's RFC."

(Docket no. 21 at 16–18.)  Concerning Plaintiff's DM, the ALJ found:

> The claimant also alleges that he experiences a range of symptoms related to his diabetes (e.g., numbness in his toes, blurry vision).  However, the record also reflects that the claimant has been inconsistently compliant with his diabetes medication and diet and that when he is compliant, his blood sugars and symptoms are well controlled.  Because there is no evidence that these impairments more than minimally affect the claimant's ability to perform basic work activities, they are found to be non-severe.

(TR 13.)

Plaintiff argues that the ALJ "neglects to consider the fact that compliance was related to medication side effects or cost."  (Docket no. 21 at 18.)  Despite Plaintiff's argument on this issue, he does not indicate what additional functional limitations the ALJ should have assessed to accommodate for his DM.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (noting that the plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments through step four of the sequential evaluation process); *see also, Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).  Plaintiff simply has not met his burden.  For this reason, the undersigned finds that any error arising from the ALJ's failure to consider whether the cost of Plaintiff's medication affected his ability to comply with his recommended treatment is harmless.

For these reasons, the ALJ's assessment of Plaintiff's RFC should not be disturbed.[3]

---

substantial weight) and because Dr. Ramirez-Jacobs did not assign any functional limitations based on Plaintiff's recurrent tinnitus.  (*See* TR 113 (no communicative or environmental limitations).)

[3] The undersigned notes that Plaintiff argues, at the end of her brief, that "[i]t seems absurd" that the ALJ found Plaintiff was incapable of performing his past relevant work, which included owning a commercial cleaning company, but then relied on the VE's testimony at Step 5 that a person with Plaintiff's RFC could perform all of the functions required in a "cleaning" job.  (Docket no. 21 at 26.)  However, the ALJ found that Plaintiff's past work as the owner of a cleaning company was "skilled and light to medium"

## VI.  CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 21) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 26).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  August 21, 2017          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB

---

(TR 18), while the VE testified that there were, in fact, light, unskilled cleaning jobs available in Michigan and nationally.  (TR 48–50.)

UNITED STATES MAGISTRATE JUDGE

**<u>PROOF OF SERVICE</u>**

      I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 21, 2017                          <u>s/ Leanne Hosking</u>
                                                     Case Manager